UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

MRS. BENNIE MCSPADDEN, ind. )
and as next friend of Mr. )
Bennie McSpadden, )
)
      Plaintiff, )
)
  vs. )  CV 96-L-2361-W
)
THE RETIREMENT PLAN OF )
AMALGAMATED COTTON GARMENT )
AND ALLIED INDUSTRIES FUND; )
AMALGAMATED FUND )
ADMINISTRATORS AFFILIATE OF )
AMALGAMATED LIFE INSURANCE )
CO., )
)
      Defendants. )

**MEMORANDUM OPINION**

**I.   Introduction**

      Currently pending before this court is defendants' motion for summary judgment.

**II.  Undisputed Material Facts**

      Mr. Bennie McSpadden worked as an employee at the Centreville shop of Health-Tex, Inc. (Affidavit of Mrs. McSpadden ¶ 2). While working at Health-Tex, Mr. McSpadden had been enrolled in the Retirement Plan of Amalgamated Cotton Garment and Allied Industries Fund ("Amalgamated Fund"). (Affidavit of Mrs. McSpadden ¶ 5).

      The Amalgamated Fund is a multiemployer benefit fund

within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). (First Affidavit of Jeffrey Warbert ¶ 2). The Amalgamated Life Insurance Company is responsible for collecting health, welfare, and retirement contributions from all employers that are obligated, in accordance with the terms of a collective bargaining agreement entered into with the Union of Needletrades, Industrial and Textile Employees (formerly known as the Amalgamated Clothing and Textile Workers Union) (the "Union"), to contribute to the Amalgamated Fund. (First Affidavit of Jeffrey Warbert ¶ 1). Amalgamated Fund Administrators ("AFA") administers the Amalgamated Fund. (First Affidavit of Jeffrey Warbert ¶ 3).

Mr. McSpadden began suffering from dementia, and his last day of work at Health-Tex was September 29, 1992. (Affidavit of Mrs. McSpadden ¶ 2). On January 27, 1993, the Social Security Administration determined that, as of September 29, 1992, Mr. McSpadden had become disabled. (Affidavit of Mrs. McSpadden ¶ 2).

Mrs. McSpadden filed a claim for disability retirement benefits on behalf of herself and her husband with the Amalgamated Fund. (Affidavit of Mrs. McSpadden ¶ 5). The Amalgamated Fund establishes the following requirements for receipt of disability retirement benefits:

> A Participant who has not attained the Normal Retirement Date shall be eligible for a Disability Retirement Pension if his Covered Employment is terminated by reason of a Total and Permanent Disability and he has satisfied the requirements set forth below.
>
> Payment of a Disability Retirement Pension shall commence on the same date the Participant is eligible to receive disability insurance benefits under Title II of the Federal Social Security Act, in an amount determined

>     pursuant to Section 5.1 and payable in accordance with
>     Article VI, provided that the participant:
>         (a) Has filed an application for disability
>     retirement benefits,
>     AND
>         (b) Has been Totally and Permanently Disabled, as
>     defined in Section 2.1 hereof, such Disability has
>     continued for a period of at least 18 consecutive weeks,
>     and there has been a determination under the Federal
>     Social Security Act that onset date of such Disability is
>     within four months of Last Date of Covered Employment.
>     ...

(Amalgamated Fund, Exhibit B to Affidavit of Mrs. McSpadden, at 9-10, § 4.3). The Amalgamated Fund defines covered employment as "active employment of an Employee for whom the Employer is obligated to contribute to the Fund for retirement purposes." (Amalgamated Fund, Exhibit B to Affidavit of Mrs. McSpadden, at 2, § 2.1(c)).

On February 18, 1994, the Fund denied the claim. (Affidavit of Mrs. McSpadden ¶ 6). The denial letter stated, "Our records show that your last day of covered employment was in September, 1990, and you have provided us with documentation showing that your onset date of disability is September 29, 1992, more than 4 months from your last date of covered employment. Therefore, you are ineligible for a disability pension benefit." (Exhibit D to Affidavit of Mrs. McSpadden). Mrs. McSpadden appealed the denial, and the denial was upheld on August 23, 1994. (Affidavit of Mrs. McSpadden ¶ 7).

Health-Tex was a party to a series of collective bargaining agreements entered into with the Union obligating it to contribute the Amalgamated Fund's retirement plan. (First Affidavit of Jeffrey Warbert ¶ 6). Further, the Fund's records

3

indicate that, on March 10, 1991, Health-Tex sold the Centreville facility, withdrew from the Amalgamated Fund, and made no further contributions to the Fund. (First Affidavit of Jeffrey Warbert ¶¶ 7-9). The new owner of the Centreville facilities, V.F. Corp., did not become a participating employer in the Amalgamated Fund's retirement plan. (First Affidavit of Jeffrey Warbert ¶ 10).

In the denial letter, Mr. McSpadden's last date of covered employment was listed as September 1990. However, Health-Tex did not cease its contributions until March 1991. In September 1990, Mr. McSpadden went out on a short-term disability. (First Affidavit of Jeffrey Warbert ¶ 11). Although he returned to active employment in June 1992, defendants reasoned that the period of covered employment for Mr. McSpadden ended in September 1990, the last date on which he had been in active employment while Health-Tex was obligated to contribute to the Fund.

Plaintiffs argue that Mr. McSpadden was in covered employment with Health-Tex within four months of September 29, 1992. In support of this, plaintiffs have submitted copies of payroll stubs from June 2, 1992 through October 2, 1992. (Affidavit of Mrs. McSpadden ¶ 10). These stubs have the word "Health-Tex" printed on them. (Exhibit G to Affidavit of Mrs. McSpadden). Also, plaintiffs assert that they have never been notified by anyone that their enrollment in the Amalgamated Fund had in any way been modified, transferred, or terminated. (Affidavit of Mrs. McSpadden ¶ 12).

The trust document that created the Amalgamated Fund

4

states, "Each applicant for retirement benefits shall furnish to the Trustees such facts and information as the Trustees may reasonably require with respect to the applicant's meeting the eligibility requirements of the Retirement Plan. ... The Trustees shall have the sole and exclusive right to interpret and apply the terms and provisions of the Retirement Plan [and] to determine whether or not the applicant has met the eligibility requirements of the Retirement Plan and qualifies for retirement benefits...." (Agreement and Declaration of Trust, Exhibit C to Second Affidavit of Jeffrey Warbert).

### III. Procedural History

On September 9, 1996, Mrs. McSpadden brought suit individually and as next friend of Mr. McSpadden against the Amalgamated Fund and AFA for disability retirement benefits. On May 29, 1997, plaintiff amended the complaint to add a second count. The second count alleged that defendants breached the fiduciary duties imposed by 29 U.S.C. § 1109 by the following acts: (1) failing to enforce collective bargaining contribution requirements owed by Health-Tex; (2) waiving or consenting to Health-Tex's failure to contribute to the Fund as required by the collective bargaining agreement; (3) failing to notify the beneficiaries of Health-Tex's failure to contribute and of defendant's failure to enforce Health-Tex's obligations; (4) terminating or altering the benefits for Health-Tex employees working in Centreville, Alabama, Warrenton, Georgia, and Danville,

5

Virginia; and (5) transferring the interests of the Fund beneficiaries to a less desirable plan. Plaintiff alleges that this breach of fiduciary duty caused Mr. McSpadden to be uninsured for medical disabilities. Thus plaintiff prayed the court to fashion whatever equitable relief might protect plaintiff or, alternatively, to award damages to compensate plaintiff for the canceled insurance benefits.

On May 30, 1997, defendants filed a motion for summary judgment.

## IV. Motion for summary judgment

In reviewing a motion for summary judgment, the motion is granted if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Alabama, 941 F.2d 1428, 1437 (11th Cir. 1991). The evidence of the non-movant is to be believed, and the court is not to engage in jury functions such as determining credibility and weighing the evidence. Four Parcels, 941 F.2d at 1437. However, when the non-movant bears the burden of proof at trial and a motion for summary judgment has been made, the non-movant bears the burden of coming forward with sufficient evidence on each element that must be proved. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). If, on any part of the prima facie case, there would be insufficient evidence to require submission of the case to a jury, summary

judgment is appropriate. <u>Earley</u>, 907 F.2d at 1080. As there is no genuine issue as to any material fact, the only question left to be resolved is whether plaintiff has stated any claim under which she can recover.

### A. Plaintiff's claim for benefits

In determining whether the motion for summary judgment should be granted as to plaintiff's claim for benefits, the claim decision "is to be reviewed under a <u>de novo</u> standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). The court, however, does not need to decide whether the language contained in the Agreement and Declaration of Trust is sufficient to confer some standard of review which is more lenient than <u>de novo</u> review; indeed, under the <u>de novo</u> standard, defendants correctly denied plaintiff's claim for benefits.

In order to recover under her claim for disability retirement benefits, plaintiff bears the burden of proving that Mr. McSpadden was in covered employment within four months of September 29, 1992. However, after March 1991 Health-Tex made no further contributions to the Amalgamated Fund. Plaintiff has shown no evidence that Health-Tex was obligated to make contributions to the Fund. Thus plaintiff has failed to prove that Mr. McSpadden was in covered employment within four months of the date that he became disabled.

7

Plaintiff asserts that the burden is on the Amalgamated Fund and AFA to prove that Health-Tex was no longer obligated to make contributions to the Fund at the time in question. However, only Health-Tex and V.F. Corp. were parties to the sale of the Centreville facility. Further, only the Centreville facility's owner and the Union were parties to the collective bargaining agreement. The Amalgamated Fund and AFA were not parties to any of the events which determined whether Health-Tex was obligated to make contributions to the Fund within four months of September 29, 1992. These defendants cannot be forced to prove events to which they were not parties. If she wishes to recover, the burden is on plaintiff to prove that Mr. McSpadden was eligible for the retirement disability benefits at issue sub judice. Plaintiff has failed to meet this burden, and summary judgment is appropriate.

### B. Plaintiff's claim for breach of fiduciary duty

Plaintiff's claim for breach of fiduciary duty is based on 29 U.S.C. § 1109. A participant can bring a civil action for appropriate relief under 29 U.S.C. § 1109. 29 U.S.C. § 1132(a)(2). However, recovery for a violation of § 1109 "inures to the benefit of the plan as a whole." Massachusetts Mutual Life Insurance Company v. Russell, 473 U.S. 134, 140 (1985). Further, "the potential personal liability of the fiduciary is `to make good to such plan any losses to the plan ... and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan.'" Id. (quoting 29 U.S.C. § 1109). Plaintiff

8

has asked the court to fashion whatever equitable relief might protect plaintiff or, alternatively, to award damages to compensate plaintiff for the canceled insurance benefits. These forms of relief are not contemplated by § 1109, and the court cannot award any recovery to plaintiff to protect or compensate her under 29 U.S.C. § 1132(a)(2).[1]

Moreover, the acts which defendants allegedly performed did not breach any fiduciary duty found in 29 U.S.C. § 1104. The Union is the proper body to enforce any collective bargaining contribution requirements owed by Health-Tex since the Union would have negotiated any collective bargaining agreement with Health-Tex. Also, it was the Union which negotiated with the owner of the Centreville facility whether benefits would be altered and whether

---

[1] Plaintiff could, in theory, have intended to bring suit for breach of fiduciary duty under ERISA § 502(a)(3), which provides, "A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan." 29 U.S.C. § 1132(a)(3). In Varity Corp. v. Howe, 116 S. Ct. 1065 (1996), the Supreme Court held that ERISA § 502(a)(3) authorized a claim for individual relief for breach of fiduciary duty. Varity, 116 S. Ct. at 1076.
  Because plaintiff would be using § 502(a)(3) as a ruse to recover benefits, § 502(a)(3) is not available to her. In her claim for breach of fiduciary duty, plaintiff asks that the court fashion whatever equitable relief would protect plaintiff, or for an award of damages to compensate plaintiff for the canceled benefits. These forms of relief, however, can be recovered--if at all--under § 502(a)(1)(B), which allows a participant to recover benefits due under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). Thus plaintiff would be, in effect, using § 502(a)(3) as a second attempt to recover benefits. Because plaintiff has an adequate remedy in § 502(a)(1)(B), she is prevented from recovering the damages she might have demanded under § 502(a)(3).
  To trigger recovery under § 502(a)(3), the ERISA statute must fail to remedy the wrongs that were done to plaintiff. Varity, 116 S. Ct. at 1079; Forsyth v. Humana, Inc., 114 F.3d 1467, 1475 (9th Cir. 1997); Ream v. Frey, 107 F.3d 147, 152-53 (3rd Cir. 1997); Wald v. Southwestern Bell Corporation Customcare Medical Plan, 83 F.3d 1002, 1006 (8th Cir. 1996); Short v. American Cast Iron Pipe Co., 961 F. Supp. 261, 266 (N.D. Ala. 1997). Plaintiff has alleged no damage for the breach of fiduciary duty which cannot be remedied by § 502(a)(1)(B). Thus, there is no appropriate equitable relief available to plaintiff under § 502(a)(3), and summary judgment is appropriate.

beneficiaries would be transferred to another plan. Because defendants were not parties to any of the transactions which determined whether plaintiff's husband would be in covered employment, it is impossible to impose on defendants any duty to inform plaintiff that her husband was not in covered employment. Defendants did not breach any fiduciary duty owed to plaintiff or her husband. Thus summary judgment is appropriate as to plaintiff's claim for breach of fiduciary duty.

## V. Conclusion

Plaintiff's complaint contains claims for benefits and breach of fiduciary duty. Summary judgment is appropriate as to both of plaintiff's claims. Thus, as established above and set out in the accompanying order, this court is today granting defendants' motion for summary judgment.

DONE this 16th day of July 1997.

*[signature]*
SENIOR JUDGE